No.  21-1270

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

IN RE:

CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR FOOD SAFETY,

Petitioners.

---

**PETITION FOR WRIT OF MANDAMUS**

---

JONATHAN CARTER EVANS
DC Cir Bar #53186
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 844-7100 x318
Fax: (510) 844-7150

STEPHANIE M. PARENT
DC Cir Bar #56357
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Tel: (971) 717-6404
Fax: (503) 283-5528

*Attorneys for Petitioners*
*Center for Biological Diversity and Center for Food Safety*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION.......................................................2

RELIEF SOUGHT ..............................................................................6

ISSUE PRESENTED ...........................................................................6

FACTS NECESSARY TO UNDERSTAND ISSUE PRESENTED .......7

I.      EPA'S MANDATORY ESA DUTIES .........................................7

II.     A DECADE OF EPA'S FAILURE TO COMPLY WITH THE ESA ...........7

        A.      The CTP Registration Process and Timeline ........................8

        B.      The Prior CTP Litigation and Remand Order .....................10

        C.      EPA's Inaction Since the 2017 Remand Order...................10

III.    EPA PATTERN OF REFUSAL TO COMPLY WITH THE ESA
        WITHOUT A COURT ORDER................................................13

IV.     CONTINUING USE AND EFFECTS OF CTP...........................14

REASONS WHY THE WRIT SHOULD ISSUE ..................................16

I.      PETITIONERS ARE ENTITLED TO MANDAMUS RELIEF..................17

        A.      EPA is Violating Clear Duties to Act .................................18

        B.      No Adequate Alternative Remedy Exists ...........................19

II.     EPA'S DELAY IS SUFFICIENTLY EGREGIOUS TO WARRANT THIS
        COURT'S INTERVENTION....................................................20

        A.      EPA's Failure to Heed this Court's Remand Order Warrants
                Mandamus ....................................................................20

        B.      The TRAC Factors Support Mandamus Relief....................22

1. EPA's eight-year delay is unreasonable ......................................23

2. EPA's delay is unreasonable when judged in the context of the ESA's overall statutory scheme ..................................................25

3. EPA's delay is unreasonable considering the human health and welfare concerns prejudiced by the delay ..................................27

4. Competing priorities do not justify the delay ..............................29

5. No impropriety is necessary ......................................................30

III. A COURT-IMPOSED DEADLINE AND VACATUR ARE NECESSARY ...........................................................................................................31

CONCLUSION ........................................................................................33

ADDENDUM OF CIRCUIT RULE 21(d) CERTIFICATES ...................................1

RULE 26.1 DISCLOSURE STATEMENT...............................................................4

# TABLE OF AUTHORITIES

**Authorities upon which Petitioners chiefly rely are marked with asterisks.**

## Cases

*13th Reg'l Corp. v. U.S. Dep't of Interior*
  654 F.2d 758 (D.C. Cir. 1980) ..............................................................18

*Air Line Pilots Ass'n, Int'l v. C.A.B.*
  750 F.2d 81 (D.C. Cir. 1984) ..............................................................23

*Am. Hosp. Ass'n v. Burwell\**
  812 F.3d 183 (D.C. Cir. 2016) ............................................. 17, 20, 21, 22, 25, 29

*Am. Waterways Operators v. Wheeler*
  507 F. Supp. 3d 47 (D.D.C. 2020) .......................................................32

*Beatty v. Washington Metro. Area Transit Auth.*
  860 F.2d 1117 (D.C. Cir. 1988) ..........................................................18

*Biodiversity Legal Found. v. Norton*
  285 F. Supp. 2d 1 (D.D.C. 2003) .................................................. 26, 28

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*
  316 F. Supp. 3d 349 (D.D.C. 2018), *aff'd*, 971 F.3d 340 (D.C. Cir. 2020).........20

*Ctr. for Biological Diversity v. EPA\**
  861 F.3d 174 (D.C. Cir. 2017) ........ 1, 2, 3, 4, 5, 7, 8, 9, 10, 13, 16, 18, 19, 25, 29

*Cutler v. Hayes*
  818 F.2d 879 (D.C. Cir. 1987) .................................................... 24, 25

*Defs. of Wildlife v. Adm'r, EPA*
  882 F.2d 1294 (8th Cir. 1989) ...........................................................13

*Defs. of Wildlife v. Browner*
  909 F. Supp. 1342 (D. Ariz. 1995) .....................................................30

*Ellis v. Housenger*,
    252 F. Supp. 3d 800 (N.D. Cal. 2017) ...................................................13

*Envtl. Def. Fund v. EPA*,
    852 F.2d 1316.............................................................................................31

*Farmworker Ass'n of Fla. v. EPA*
    2021 U.S. App. LEXIS 16882 (D.C. Cir. Jun. 7, 2021) .............................. 13, 14

*Havens Realty Corp. v. Coleman*
    455 US 363 (1982) .......................................................................................5

*In re Am. Rivers & Idaho Rivers United**
    372 F.3d 413 (D.C. Cir. 2004) ................................................. 17, 23, 26, 27, 32

*In re Barr Labs., Inc.*
    930 F.2d 72 (D.C. Cir. 1991) ...................................................... 27, 30

*In re Bluewater Network*
    234 F.3d 1305 (D.C. Cir. 2000) .............................................. 16, 20, 27

*In re Cheney*
    406 F.3d 723 (D.C. Cir. 2005) ....................................................................17

*In re Core Commc'ns, Inc.**,
    531 F.3d 849 (D.C. Cir. 2008) ................... 3, 6, 18, 19, 20, 21, 23, 30, 31, 32, 33

*In re Idaho Cons'n League*
    811 F.3d 502 (D.C. Cir. 2016) ..................................................................6, 33

*In re Int'l Chem. Workers Union*
    958 F.2d 1144 (D.C. Cir. 1992) .......................................... 23, 27, 32

*In re Nat. Res. Def. Council, Inc.*
    956 F.3d 1134 (9th Cir. 2020) .....................................................................32

*In re People's Mojahedin Org. of Iran*
    680 F.3d 832 (D.C. Cir. 2012) ............................................. 21, 23, 31

*In re Public Empls. for Envt'l Responsibility*
    957 F.3d 267 (D.C. Cir. 2020) ....................................................................29

*In re United Mine Workers of America International Union*
190 F.3d 545 (D.C. Cir. 1999) ...............................................................29

*Lujan v. Defs. Of Wildlife*
504 U.S. 555 (1992) .............................................................................4

*MCI Telecommunications Corp. v FCC*
627 F.2d 322 (D.C. Cir. 1980) ............................................. 17, 32, 33

*Muwekma Tribe v. Babbitt*
133 F. Supp. 2d 30 (D.D.C. 2000) ........................................ 23, 24, 30

*NetCoalition v. S.E.C.*
715 F.3d 342 (D.C. Cir. 2013) ...............................................................2

*North Carolina v. EPA*
550 F.3d 1176 (D.C. Cir. 2008) ...........................................................20

*NRDC v. EPA*
489 F.3d 1250 (D.C. Cir. 2007) ...........................................................20

*Potomac Elec. Power Co. v. I.C.C.*
702 F.2d 1026 (D.C. Cir.), *supplemented*, 705 F.2d 1343
(D.C. Cir. 1983) ....................................................................... 2, 21, 31

*Pub. Citizen Health Research Grp. v. Brock*
823 F.2d 626 (D.C. Cir. 1987) .............................................................31

*Pub. Citizen Health Research Grp. v. Comm'r, FDA*
740 F.2d 21 (D.C. Cir. 1984) ....................................................... 24, 27

*Public Citizen Research Health Grp. v. Auchter*
702 F.2d 1150 (D.C. Cir. 1983) ...........................................................23

*Radio–Television News Directors Ass'n v. FCC*
229 F.3d 269 (D.C. Cir. 2000) ..................................................... 21, 32

*Sierra Club v. EPA*
719 F.2d 436 (D.C. Cir. 1983) .............................................................32

*Sinclair Wyoming Refining Co., v. Envt'l Prot. Agency*
    2021 U.S. Ap. LEXIS 36518 (D.C. Cir. Dec. 8, 2021) .......................................32

*Telcomms. Research & Action Ctr. (TRAC) v. FCC\**
    750 F.2d 70 (D.C. Cir. 1984) .......................... 4, 17, 19, 20, 22, 24, 25, 27, 29, 30

*Tenn. Valley Auth. v. Hill\**
    437 U.S. 153 (1978) ........................................................................ 13, 26, 28, 29

*United States v. Monzel*
    641 F.3d 528 (D.C. Cir. 2011) ...........................................................................17

*United States v. New York Tel. Co.*
    434 U.S. 159 (1977) ...........................................................................................3

*Wash. Toxics Coal. v. EPA*
    413 F.3d 1024 (9th Cir. 2005) ...........................................................................13

*Wash. Toxics Coal. v. EPA,*
    No. C01-132C, 2002 U.S. Dist. LEXIS 27654 (W.D. Wash. July 2, 2002) .......13

## Statutes

16 U.S.C. § 1536(a)(2)................................................................................ 7, 16, 26

16 U.S.C. § 1536(a)(3)...................................................................................25

16 U.S.C. § 1536(b)(1)(A)...............................................................................26

28 U.S.C. § 1651(a), ........................................................................................2

5 U.S.C. § 706(1))............................................................................................4

5 U.S.C. §555(b) ..............................................................................................4

7 U.S.C. §139n(b) ............................................................................................3

## Other Authorities

77 Fed. Reg. 12,295 (Feb. 29, 2012) ...............................................................8

*Ctr. for Biological Diversity v. EPA*
  Case No. 07-cv-02794 (N.D. Cal.) .........................................................13

*Ctr. for Biological Diversity v. EPA*
  Case No. 11-cv-00293 (N.D. Cal.) .........................................................13

*Ctr. for Biological Diversity v. Johnson*
  Case No. 02-cv-1580 (N.D. Cal.) ...........................................................13

*Ctr. for Biological Diversity, et al. v. US EPA*
  Case No. 20-73146 (9th Cir.)......................................................... 11, 14

*Ctr. for Food Safety v. EPA*
  Case Nos. 19-72109 & 19-72280 (9th Cir.)................................... 11, 14

*Ellis v. Keigwin*
  Case No. 13-cv-01266 (N.D. Cal.) .........................................................13

*Farmworker Ass'n of Florida v. U.S. EPA*
  Case No. 21-1079 (D.C. Cir.) ................................................................11

H.R. Rep. No. 93-412 (1973).....................................................................28

*Natural Res. Def. Council v. Regan*
  Case No. 17-2034 (D.D.C.)........................................................ 11, 13, 14

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| APA | Administrative Procedure Act |
| CTP | cyantraniliprole |
| EPA | U.S. Environmental Protection Agency |
| ESA | Endangered Species Act |
| FIFRA | Federal Insecticide, Fungicide, and Rodenticide Act |
| FOIA | Freedom of Information Act |
| ID | Interim Decision |

# INTRODUCTION

This case seeks to compel the U.S. Environmental Protection Agency ("EPA") to comply with its duties that Congress set forth in the Endangered Species Act ("ESA") and as ordered by this Court in *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174 (D.C. Cir. 2017). EPA has disregarded this Court's Remand Order for four and one-half years and ignored its congressionally-mandated duties in the ESA for nearly eight years. In so doing, EPA has effectively nullified this Court's determination that it violated the ESA and rendered the regulatory scheme that Congress crafted anarchic. The Center for Biological Diversity and Center for Food Safety ("Petitioners"), petitioners in the prior case, seek mandamus relief because there is no reason to believe that the agency will act without an order from the Court directing EPA to comply with the law by a date certain and vacating EPA's action if it fails to meet the deadline.

On June 30, 2017, this Court held that EPA violated the ESA by registering the insecticide cyantraniliprole ("CTP") before making an ESA effects determination or consulting with other agencies. *Id.* at 188. This Court noted that the ESA duty is mandatory, and an agency "may not duck its consultation requirement, whether based on limited resources, agency priorities or otherwise." *Id.* at 188, n.10. This Court remanded the CTP registration to EPA without vacatur

"for proceedings consistent with this opinion." *Id.* at 189. Nonetheless, EPA has not complied with this Court's Remand Order to date.

EPA has not only disregarded this Court's Remand Order, it also has unreasonably delayed compliance with the mandatory duties Congress required in Section 7(a)(2) of the ESA for nearly eight years. EPA registered CTP on January 24, 2014. EPA acknowledged, and this Court affirmed, that the statute requires EPA to make an ESA-effects determination *before* issuing its final registration. EPA intentionally decided to register CTP without complying with Congress's mandate then and has ducked it since.

EPA's failure to comply with this Court's Remand Order and its statutory duties warrants granting this Petition, ordering EPA to conduct an ESA analysis as expeditiously as possible and in no event later than six months of granting the Petition, or, if EPA fails to do so, the CTP registrations are vacated. The Court should also retain jurisdiction over this matter.

## STATEMENT OF JURISDICTION

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has authority to issue a writ of mandamus to "effectuate or prevent the frustration of orders previously issued." *NetCoalition v. S.E.C.*, 715 F.3d 342, 354 (D.C. Cir. 2013) (quoting *Potomac Elec. Power Co. v. I.C.C.* ("*PEPCO*")), 702 F.2d 1026, 1032 (D.C. Cir.), *supplemented*, 705 F.2d 1343 (D.C. Cir. 1983)); *see also United States*

*v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained").

This Court obtained jurisdiction over EPA's CTP registration decision pursuant to Section 16(b) of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), which provides the courts of appeals "exclusive jurisdiction" to judicially review EPA's pesticide registrations following a public hearing. *Ctr. for Biological Diversity*, 861 F.3d at 185-88 (citing 7 U.S.C. §139n(b)). This Court granted the petition for review and remanded the case to EPA for proceedings consistent with this Court's opinion to comply with the ESA. *Id.* at 189. Accordingly, this Court has jurisdiction to issue a writ of mandamus to effectuate or prevent nullification of its Remand Order. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855-56, n.5 (D.C. Cir. 2008) (noting agency failure to respond to Court's own remand "has effectively nullified our determination that its interim rules are invalid . . ." and holding it is "undisputed" the Court has jurisdiction over the petition for writ of mandamus concerning remand).

The Administrative Procedure Act ("APA") provides additional support because it "does indicate a congressional view that agencies should act within

reasonable time frames and that court's designated by statute to review agency actions may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed." *Telcomms. Research & Action Ctr. (TRAC) v. FCC*, 750 F.2d 70, 76-77 (D.C. Cir. 1984) (citing 5 U.S.C. §555(b) and 5 U.S.C. § 706(1)).

Petitioners have standing. This Court held that Petitioners had standing in the initial petition for review of EPA's registration of CTP. *Ctr. for Biological Diversity*, 861 F.3d at 181-85; *see also Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). Likewise, here, Petitioners again have standing to effectuate the Remand Order in the prior case to protect their interests that continue to be harmed by EPA's ongoing delay in complying with the ESA as required by Congress and this Court. *See generally* Appendix of Attachments In Support of Petition for Writ of Mandamus, ATT_0001 – ATT_0211 (Appendix bates numbering ATT_#).

Petitioners have associational standing. As this Court previously held, there was "no difficulty" finding the interest CBD seeks to protect is germane to its purpose, and the claim asserted and relief requested do not require a member to participate in the lawsuit. *Ctr. for Biological Diversity*, 861 F.3d at 182. This Court also held CBD members had standing to sue in their own right. *Id.* The injury to members for failure to comply with Section

7 of the ESA is a procedural injury that relaxes the redressability and imminence of harm requirements. *Id.* at 182-83. This Court also held CBD demonstrated EPA's failure to make an ESA effects determination caused its members' concrete, particularized injury to aesthetic and recreational interests. *Id.* at 183-85 (citing, specifically, members' Miller and Buse interests in Valley Elderberry Longhorn Beetle and Mitchell's satyr butterfly, respectively); *see also* Declarations of Miller (ATT_0093 - ATT_0122), and Buse (ATT_0040 - ATT_0049) (asserting continuing interest in these species on the same basis that EPA has failed to comply with the ESA); ATT_0154 - ATT_0190 (showing geographic nexus). Concerning redressibility, this Court held that "there remains at least the possibility that [EPA] could reach a different conclusion—say, by modifying the registration order." *Id.* at 185.

Petitioners also have organizational standing under *Havens Realty Corp. v. Coleman* because EPA's continuing failure to comply with the ESA and this Court's Remand Order has frustrated Petitioners' missions and they have had to divert substantial resources to identify and counteract EPA's illegal activity. 455 U.S. 363, 383 (1982). , *See* Declarations of Hartl (ATT_0192 - ATT_0208), Burd (ATT_0019 – ATT_0033), and Hanson (ATT_0077 - ATT_0083).

## RELIEF SOUGHT

Petitioners seek an order granting this Petition and ordering EPA to conduct the mandatory ESA analysis as expeditiously as possible and in no event later than six months of granting the Petition, or, if EPA fails to do so, the CTP registrations are vacated. *See In re Core Commc'ns, Inc.*, 531 F.3d at 861-62 (granting writ of mandamus on July 8, 2008 and ordering the agency to respond to the Court's 2002 remand by November 5, 2008, with no extensions, otherwise, the interim rules would be vacated by November 6, 2008). Petitioners also ask this Court to retain jurisdiction over this matter. *In re Idaho Cons'n League*, 811 F.3d 502, 516 (D.C. Cir. 2016) (per curiam) (entering order requiring EPA to take actions by dates certain, retaining jurisdiction over the matter, and requiring EPA to submit status reports every six months).

## ISSUE PRESENTED

Whether EPA's failure to comply with this Court's Remand Order for four and one-half years frustrates the Remand Order and EPA's failure to comply with congressionally-mandated ESA duties for nearly eight years since it registered CTP is egregious such that the Court should order the relief requested above.

**FACTS NECESSARY TO UNDERSTAND ISSUE PRESENTED**

## I.   EPA'S MANDATORY ESA DUTIES

This Court's prior decision sets forth EPA's mandatory duties to comply with the ESA when registering pesticides pursuant to FIFRA. *Ctr. for Biological Diversity*, 861 F.3d at 177-179. Specifically, this Court held EPA violated Section 7(a)(2) "by registering CTP before making an effects determination or consulting" the expert wildlife agencies, which EPA admitted it failed to do. *Id.* at 188 (citing 16 U.S.C. § 1536(a)(2)); *see also id*. at 188, n.10 ("In no uncertain terms, the ESA mandates that every federal agency 'shall' engage in consultation before taking 'any action' that could 'jeopardize the continued existence of any endangered species or threatened species.'").

## II.   A DECADE OF EPA'S FAILURE TO COMPLY WITH THE ESA

Many facts are set forth in this Court's decision holding that EPA violated the ESA by registering CTP before complying with its ESA duties. *Ctr. for Biological Diversity v. EPA*, 861 F.3d at 179-181. Petitioners provide a succinct timeframe to understand the issues presented here. In sum: in early 2012, EPA began the registration process for CTP; in early 2014, EPA expressly and intentionally declined to comply with the ESA when it registered CTP, despite finding potential for effects on ESA-protected species; in mid-2016, EPA admitted in its brief to this Court that it had not acted consistent with the ESA; and in mid-

2017, this Court issued its Remand Order requiring EPA to comply with the ESA.

Yet, EPA has continued violating the ESA and ignored this Court's Remand Order.

### A. The CTP Registration Process and Timeline

On February 29, 2012, EPA opened a docket on regulations.gov for an application to register the new active ingredient, CTP, and pesticide products containing it. *Id.* at 180; 77 Fed. Reg. 12,295, 12,295–97 (Feb. 29, 2012); Docket # EPA-HQ-OPP-2011-0668.[1]

On June 6, 2013, EPA posted its Environmental Fate and Ecological Risk Assessment for the Registration of the New Chemical Cyantraniliprole - Amended (Apr. 30, 2013) ("Risk Assessment"); Docket # EPA-HQ-OPP-2011-0668-0008. EPA's Risk Assessment determined that the insecticide "CTP is 'highly toxic or very highly toxic' to multiple taxonomic groups, including terrestrial invertebrates such as butterflies and beetles." *Ctr. for Biological Diversity*, 861 F.3d at 180; Risk Assessment at 5. The results of EPA's Risk Assessment also indicated that proposed uses of CTP had the potential for direct effects to ESA-protected threatened and endangered species, including listed terrestrial and freshwater invertebrates from acute exposure and listed mammals from chronic exposure, and for indirect effects on many listed species that depend on other species for food,

---

[1] EPA's CTP Registration Docket is available at Regulations.gov. Regulations.gov documents are noted by Docket #.

habitat, or other resources. Risk Assessment at 5-6. EPA concluded that 1,377 endangered species' habitats overlapped with counties where CTP was proposed to be used, including habitats of the Valley Elderberry Longhorn Beetle and the Mitchell's satyr butterfly. *Ctr. for Biological Diversity*, 861 F.3d at 180; Risk Assessment at 151. Moreover, CTP remains in the environment for years after use. Risk Assessment at 25, 30 (finding half-life of several years in the soil and water).

Also on June 6, 2013, EPA posted its Proposed Registration of the New Active Ingredient Cyantraniliprole (June 5, 2013). Docket # EPA-HQ-OPP-2011-0668-0006. Petitioners submitted comments, stressing that EPA must comply with the ESA before making a final decision to register CTP allowing its sale and use in the environment. *See, e.g.*, Comment submitted by Petitioner, Center for Biological Diversity (July 13, 2013), Docket # EPA-HQ-OPP-2011-0668-0041.

On February 5, 2014, EPA posted its Response to Public Comments on the agency's proposed registration of CTP. Docket # EPA-HQ-OPP-2011-0668-0058. Notably, EPA acknowledged its ESA duty to issue an effects determination and engage in consultation and admitted that it knowingly and intentionally would not comply with these requirements before making its decision. *Id.* at 40-41. On the same date, EPA posted its final decision registering CTP. Registration of the New Active Ingredient Cyantraniliprole (Jan. 24, 2014), Docket # EPA-HQ-OPP-2011-0668-0057. The CTP Registration Decision does not mention the ESA. *Id.*

## B.    The Prior CTP Litigation and Remand Order

On March 24, 2014, petitioners filed a petition for review of EPA's final decision to register CTP. In addition to its 2014 admission in its Response to Comments, on May 18, 2016, EPA admitted to this Court that it had not made "an 'effects' determination or initiated consultation consistent with ESA § 7" when registering CTP and argued that "[i]f the Court reaches the merits," the Court should remand the "EPA's registration order for compliance with the ESA and its implementing regulations." *Ctr. for Biological Diversity,* Brief of Respondent-Appellee at 19, Doc. 1613964, (May 18, 2016) ("EPA Brief").

On June 30, 2017, this Court held that EPA "violated section 7(a)(2) of the ESA by registering CTP before making an effects determination or consulting with the [expert wildlife agencies]." *Ctr. for Biological Diversity*, 861 F.3d at 188 (citing 50 C.F.R. § 402.14(a)). This Court ordered remand without vacatur to EPA for "proceedings consistent with this opinion." *Id.* at 189.

## C.    EPA's Inaction Since the 2017 Remand Order

As of today's date, EPA has not complied with this Court's Remand Order or the ESA. EPA has repeatedly represented that it has not even begun work to make an ESA effects determination, nor is it committed to do so.

First, in at least four recent cases concerning EPA's failure to comply with the ESA when it registers pesticides, EPA has provided declarations indicating it is

not working on an ESA effects determination for CTP, as required by this Court's Remand Order, within any timeframe.[2] In each case, EPA's declarations in support of remand without vacatur refer to commitments to conduct ESA effects determinations for certain pesticides pursuant to court-ordered settlement agreements, as well as noting other ongoing cases have potential for additional obligations through court-ordered deadlines. ATT_0242 – ATT_0243, ATT_0256, ATT_0272 – ATT_273, ATT_0283. These declarations omit any reference to this Court's 2017 Remand Order as a legal obligation nor provide a timeframe in which it will comply. *Id*.

Second, Petitioner Center for Biological Diversity ("CBD") submitted three Freedom of Information Act ("FOIA") requests for records mentioning EPA's ESA effects determination for CTP to determine whether EPA intended to comply with this Court's Remand Order. ATT_0202, Hartl Decl. ¶ 19. In response to one request, EPA stated that "[a]n extensive search was conducted, and we were unable to find any responsive records to your request." ATT_0288, Hartl Decl. ¶ 19, Ex.

---

[2] ATT_0201 – ATT_203, ATT_0228 – ATT_0286, Declaration of Brett Hartl ("Hartl Decl.") at ¶17, Ex. 3-6: *Ctr. for Food Safety, et al. v. U.S. Envtl. Protection Agency*, Case Nos. 19-72109 & 19-72280, Dkt. 51-2, Matuszko Decl.(9th Cir. Oct. 26, 2020); *Farmworker Ass'n of Florida v. U.S. Envt'l Prot. Agency*, Case No. 21-1079 (D.C. Cir. Apr. 19, 2021), Doc. #1895080, Matuszko Decl.; *Ctr. for Biological Diversity, et al. v. U.S. Envtl. Prot. Agency*, Case No. 20-73146 (9th Cir. Sept. 10, 2021), Dkt. 39-2, Matuszko Decl.; *Natural Res. Def. Council v. Regan*, Case No. 17-2034 (D.D.C. June 11, 2021), Dkt. 59-3, Matuszko Decl.

7. In response to the other requests, EPA later produced records, none of which address CTP ESA effects. The only relevant page contains a table that schedules opening the CTP docket for registration review in FY2024 and producing an interim decision ("ID") no later than 2029. ATT_0202, ATT_0292, Hartl Decl. ¶ 20, Ex. 8. Congress mandated registration review of new active ingredients fifteen years after the date it was registered. 7 U.S.C. 136a(g)(1)(A)(iii)(II). EPA does not conduct ESA effects determinations, if at all, until after it produces an interim registration review decision. ATT_0203, Hartl Decl. ¶ 21 (providing examples of interim registration review decisions that intentionally do not complete ESA analyses). EPA's current pace and approach would allow ongoing legal violations for at least another eight years.

Third, on December 2, 2021, EPA announced that complying with the ESA "is also part of the registration review process" and that "in the coming months, the Agency will release its first ESA pesticides workplan, which will outline steps the Agency will take to come into compliance with the ESA in ways that are fair and transparent to the agriculture sector."[3] This demonstrates, stunningly, for decades EPA has had no plan to comply with the ESA for any pesticides, much less CTP. EPA's duties under the ESA are to protect endangered species, "whatever the

---

[3] https://www.epa.gov/pesticides/epa-announces-updated-schedule-completes-safety-assessments-and-decisions-hundreds.

cost," not to run roughshod over Congressional mandates. *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184 (1978). Even if EPA includes CTP in its workplan, the workplan is not judicially enforceable; a court-ordered deadline is.

## III.   EPA PATTERN OF REFUSAL TO COMPLY WITH THE ESA WITHOUT A COURT ORDER

While it is well-settled that the ESA requires EPA to consult with the expert wildlife agencies before authorizing uses of a pesticide that pose risks to endangered species, courts have repeatedly had to rule against EPA's attempts to skirt ESA compliance. *Defenders of Wildlife v. Adm'r, EPA*, 882 F.2d 1294, 1301 (8th Cir. 1989); *Washington Toxics Coalition v. Envtl. Protec. Agency*, 413 F.3d 1024, 1032 (9th Cir. 2005); *Ctr. for Biological Diversity*, 861 F.3d at 188; *Ctr. for Biological Diversity v. EPA*, 847 F.3d 1075, 1093 (9th Cir. 2017); *Ellis v. Housenger*, 252 F. Supp. 3d 800, 820 (N.D. Cal. 2017); *Farmworker Ass'n of Fla. v. EPA*, 2021 U.S. App. LEXIS 16882.[4]

---

[4] *See also Wash. Toxics Coal. v. EPA*, No. C01-132C, 2002 U.S. Dist. LEXIS 27654, at *50-51 (W.D. Wash. July 2, 2002); *Ctr. for Biological Diversity v. Johnson*, No. 02-cv-1580, Stipulated Inj. & Order, Dkt. 242 (N.D. Cal. Oct. 20, 2006); *Ctr. for Biological Diversity v. EPA*, No. 07-cv-02794, Order Approving Stipulated Inj. & Settlement at 1, 3-7, Dkt. 121 (N.D. Cal. Jan. 12, 2010); *Ellis v. Keigwin*, No. 13-cv-01266, Order Approving Stipulated Notice of Dismissal, Dkt. 371 (N.D. Cal. May 29, 2019); *Ctr. for Biological Diversity v. EPA*, No. 11-cv-00293, Proposed Stipulated Partial Settlement Agreement and Order Entering Stipulated Partial Settlement Agreement, Dkts. 364, 366 (N.D. Cal. Oct. 2019); *Natural Resources Defense Council v. Wheeler*, Case No. 1:17-CV-02034-TSC, Order granting Motion to Approve Stipulated Partial Settlement, Dkt. 55.

Instead of complying with the ESA *prior* to registering pesticides to limit harm to species threatened with extinction, EPA regularly admits it is violating the law, approves pesticides anyway, and waits to see if it is sued to address its serial violations of the law. If EPA is sued for its admitted violation, it further seeks to shirk its obligations for timely judicial oversight and allow continued harm to ESA-protected species by asking the courts to remand without vacatur or any enforceable deadline.[5] EPA's failure to comply with the ESA without a court-ordered deadline is not an isolated incident.

## IV.    CONTINUING USE AND EFFECTS OF CTP

CTP is a novel systemic insecticide with a unique chemistry. Risk Assessment at 4. Once applied, it is absorbed and systemically distributed throughout plants. *Id.* Insects that directly contact or ingest the affected plant experience unregulated muscle contraction, paralysis, and death. *Id*. at 9. EPA's ecological Risk Assessment found that CTP is "highly to very highly toxic" to certain groups of species, including terrestrial invertebrates, and persists in the

---

[5] *See, e.g.*, *Ctr. for Food Safety v. EPA*, Nos. 19-72109 & 19-72280, Motion for Voluntary Remand Without Vacatur, Dkt. 51 (9th Cir. Oct. 26, 2020); *id*. Order, Dkt. 67 (9th Cir. Jan. 12, 2021) (denying motion for remand without vacatur); *Farmworker Ass'n of Fla. v. EPA,* 2021 U.S. App. LEXIS 16882 (D.C. Cir. June 7, 2021) (denying motion for remand without vacatur and vacating aldicarb); *Nat. Resources Def. Council v. Regan*, No. 17-CV-02034, Cross-Motion for Voluntary Remand, Dkts. 59, 59-1 (D.D.C June 11, 2021) (neonicotinoid pesticides); *Ctr for Biological Diversity v. EPA*, 20-73146, Respondent's Motion for Remand without Vacatur and Response, Dkt 39-1 (9th Cir. Sept. 10, 2021).

environment for years. *Id.* at 57, 25. "Chronic exposure resulted in effects on growth in freshwater invertebrates and estuarine/marine fish," and, in mammals, chronic exposure "resulted in effects on thyroid weight and on growth of rat offspring." *Id.* EPA's modeling indicated that nearly every proposed use of CTP would lead to expected concentrations in water bodies that would harm aquatic invertebrates. *Id.* at 5, 125; *see also id.* at 130 (identifying risk to mammals from chronic exposure).

EPA identified "a total of 1377 listed species that overlap at the county-level with areas where [CTP] is proposed to be used." *Id.* at 151. The Risk Assessment also noted "a potential risk for direct adverse effects to federally-listed aquatic invertebrates, terrestrial invertebrates, terrestrial monocots, and mammals and indirect adverse effects to any listed species that rely on these taxa as resources critical to their life cycle." *Id.* at 143.

Since 2014, studies have confirmed CTP's toxicity to certain terrestrial invertebrates and aquatic species. For example, 28 days of exposure to CTP caused intestinal damage, abnormal expression of key functional genes, and decreased number of cocoons and juveniles in earthworms. ATT_0206, Hartl Decl. ¶ 24. CTP exposure was also found to harm tilapia fish and *Daphnia magna*, a common aquatic model organism.

*Id.* In 2017, a study concluded that "even low levels of diamides can pose ecological risks to aquatic ecosystems." *Id.*

## REASONS WHY THE WRIT SHOULD ISSUE

The Court should grant this Petition because this extraordinary remedy is warranted under the circumstances here. It has been nearly eight years since EPA announced that it would not comply with the ESA and registered CTP in knowing violation of its statutory duties. *See* 16 U.S.C. § 1536(a)(2); *Ctr. for Biological Diversity*, 861 F.3d at 188 n.1. In June 2017, this Court remanded without vacating the unlawful CTP Registration Order, after EPA represented it would make an effects determination and initiate any required consultations. *Ctr. for Biological Diversity*, EPA Brief at 19, 57-63, Doc. 1613964, (May 18, 2016). EPA has defied this Court's Remand Order and mandate for four and one-half years, effectively nullifying it, and it does not appear EPA intends to comply with the Remand Order or the ESA in any timeframe without a court-ordered deadline. EPA has a clear duty to act as required by Congress in the ESA and as required by this Court in its Remand Order. Petitioners are without any alternative remedy to the granting of this Petition.

EPA's unreasonable delay requires court intervention to correct EPA's "transparent violations" of its clear duties to act. *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000). There must be some time limit "[o]therwise, the

regulatory scheme Congress has crafted becomes anarchic . . . ." *MCI Telecommunications Corp. v FCC*, 627 F.2d 322, 325 (D.C. Cir. 1980); *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004) (unreasonable delay "signals the 'breakdown of regulatory processes'." (citation omitted)). Moreover, indefinite delay thwarts this Court's future jurisdiction by shielding EPA's CTP registration from further review once it finally complies with the ESA. *TRAC*, 750 F.2d at 79 ("It is obvious that the benefits of agency expertise and creation of a record will not be realized if the agency never takes action."). The *TRAC* factors support mandamus here.

Accordingly, this Court should find that EPA has thwarted the Court's Remand Order and its ESA duties with its unreasonable delay and issue a writ of mandamus directing EPA to comply within six months, vacating EPA's action if it fails to meet the deadline, and retaining jurisdiction.

## I.       PETITIONERS ARE ENTITLED TO MANDAMUS RELIEF

"To show entitlement to mandamus, petitioners must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, (3) and that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (citing *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011)). Mandamus rests within the discretion of the court. *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc).

## A.    EPA is Violating Clear Duties to Act

Petitioners easily meet the first two mandamus factors, which are closely related and frequently assessed together. Both factors turn on whether the agency was clearly directed by law to perform a duty. A duty is clear if it involves "'administration of a mandatory duty *at the operational level*, even if professional expert evaluation is required.'" *Beatty v. Washington Metro. Area Transit Auth.*, 860 F.2d 1117, 1127 (D.C. Cir. 1988) (citation omitted). Mandamus will issue where the "the obligation to act peremptory, and clearly defined." *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980). A judicial directive can create a duty on which a petitioner may premise a mandamus claim. *Core Commc'ns*, 531 F.3d at 855.

First, EPA was clearly directed by this Court to replace the CTP Registration Order with "an order consistent with [the Court's] opinion" that EPA "violated section 7(a)(2) of the ESA by registering CTP before making an effects determination or consulting with the [expert wildlife agencies]." *Ctr. for Biological Diversity*, 861 F.3d at 188. Petitioners are entitled to "[EPA] proceedings consistent with this opinion." *Id.* at 189. "There is, of course, no doubt" that an agency has a "'clear duty' to respond" to this Court's Remand Order. *Core Commc'ns*, 531 F.3d at 855; *see also PEPCO*, 702 F.2d at 1032 (authority to issue a writ of mandamus to "prevent frustration of orders previously issued").

Moreover, until EPA acts on the Remand Order, it insulates itself from future judicial review of the CTP Registration Order following completion of its ESA duties. *Core Commc'ns*, 531 F.3d at 856; *TRAC*, 750 F.2d at 76.

Second, EPA has a clear duty as set forth by Congress in the ESA, which this Court made clear. Section 7(a)(2) of the ESA "mandates that every federal agency 'shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification' of designated critical habitat." *Ctr. for Biological Diversity*, 861 F.3d at 177, 188. This statutory duty attaches *before* EPA takes final action. *Id.*

## B.     No Adequate Alternative Remedy Exists

Mandamus is Petitioners' only meaningful means of relief from EPA's unlawful and indefinite delays in "mak[ing] an effects determination and . . . engag[ing] in any required consultation." *Ctr. for Biological Diversity*, 861 F.3d at 188. Petitioners seek only to ensure that EPA's registration of CTP does not continue to violate Section 7 of the ESA. "When the case is simply remanded, and the agency drags its feet, the winning party's only recourse is to bring a mandamus petition and clear all the hurdles such actions entail." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 316 F. Supp. 3d 349, 414–15 (D.D.C.

2018), *aff'd*, 971 F.3d 340 (D.C. Cir. 2020) (quoting *NRDC v. EPA*, 489 F.3d 1250, 1264 (D.C. Cir. 2007) (Randolph, J., concurring)); *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) (petitioners "may bring a mandamus petition . . . [if] the EPA fails to modify [the rule] in a manner consistent with" the court's opinion).

## II.     EPA'S DELAY IS SUFFICIENTLY EGREGIOUS TO WARRANT THIS COURT'S INTERVENTION

Where a mandamus petition is based on agency delay, the court also must consider whether the agency's delay is "so egregious as to warrant mandamus." *TRAC*, 750 F.2d at 79; *Core Commc'ns*, 531 F.3d at 855; *Am. Hosp. Ass'n*, 812 F.3d at 189; *Bluewater Network*, 234 F.3d at 1315. Courts are generally guided by the six factors enunciated in *TRAC*, 750 F.2d 70 (the "*TRAC* factors").

EPA's delay is sufficiently egregious that mandamus is warranted because for over four years, EPA has effectively nullified this Court's previous holding. In addition, the *TRAC* factors—which illustrate the egregiousness of EPA's eight-year delay in fulfilling its ESA duties—weigh in favor of granting mandamus relief.

### A.     EPA's Failure to Heed this Court's Remand Order Warrants Mandamus

EPA's failure to comply with this Court's Remand Order should be decisive in determining whether mandamus is appropriate because it circumvents this

Court's previous decision. Because the *TRAC* factors "function not as a hard and fast set of required elements, but rather as useful guidance as to whether a delay is 'so egregious as to warrant mandamus,' their roles may differ depending on the circumstances." *Am. Hosp. Ass'n*, 812 F.3d at 189–90 (internal citation omitted). Thus, while the *TRAC* factors are "not unimportant" in cases where an agency failed to respond to a remand order, the procedural posture is "different from that of most of this circuit's unreasonable delay cases." *Core Commc'ns*, 531 F.3d at 855–56; *see also id.* at 861 (although remand did not specify a timeline, the agency's delay "effectively nullified" the court's determination). This Court also found it "decisive" that the agency not merely failed to meet a statutory deadline, but was "failing to meet *our* remand mandate." *In re People's Mojahedin Org. of Iran* ("*PMOI*"), 680 F.3d 832, 837-38 (D.C. Cir. 2012) (emphasis in original).

EPA's failure, for more than four years, to even begin the process of making an effects determination for CTP is nothing short of failure to heed the remand order. *Id.* at 838 (issuing writ when agency failed to respond to remand order within 600 days); *Radio–Television News Directors Ass'n v. FCC*, 229 F.3d 269, 271-72 (D.C. Cir. 2000) (issuing writ when agency failed to respond to remand order within nine months); *PEPCO*, 702 F.2d at 1032, 1035 (issuing a writ of mandamus when an agency failed to respond to a remand order within five years). EPA's failure warrants a writ of mandamus.

## B.    The TRAC Factors Support Mandamus Relief

EPA's eight-year delay in fulfilling its ESA obligations is so egregious that mandamus relief is appropriate. Courts are generally guided by the *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n*, 812 F.3d at 189 (citing *TRAC*, 750 F.2d at 80).

Here, the *TRAC* factors weigh in favor of granting mandamus relief: EPA's years-long delay is unreasonable, undermines the purpose of the ESA, denies communities critical information about a hazardous substance, and cannot be justified by competing priorities. Additionally, the agency's history of knowingly violating the ESA prior to registering pesticides in most instances and only when complying with court-ordered deadlines indicates that intervention by the Court is appropriate. *Supra 13-14.*

### 1. EPA's eight-year delay is unreasonable

EPA's failure, for eight years, to even begin the process of complying with its ESA obligations is patently unreasonable. The first *TRAC* factor—whether the agency's delay is reasonable— is the "most important." *Core Commc'ns*, 531 F.3d at 855. It requires inquiry into whether its response time is "governed by an identifiable rationale." *PMOI*, 680 F.3d at 837 (noting that the rule of reason factor is the "'first and most important' of the *TRAC* factors") (citation omitted).

Although there "is 'no per se rule as to how long is too long' to wait for agency action, . . . a reasonable time for agency action is typically counted in weeks or months, not years." *Am. Rivers*, 372 F.3d at 419 (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). Years-long delays have routinely been held to be unreasonable. *See Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 36-37 (D.D.C. 2000) (two years); *Public Citizen Research Health Grp. v. Auchter*, 702 F.2d 1150, 1157 (D.C. Cir. 1983) (three years); *Air Line Pilots Ass'n, Int'l v. C.A.B.*, 750 F.2d 81, 86 (D.C. Cir. 1984) (five-years); *Am. Rivers*, 372 F.3d at 420 (six years).

EPA has stretched the "rule of reason" beyond its limits. Its delay in ESA compliance has been *nearly eight years* and is all the more glaring because of the agency's history of knowingly failing to comply with the ESA when registering pesticides. *Supra 13-14.* Since this Court's Remand Order in 2017, EPA has not

demonstrated any progress in making an effects determination for CTP, let alone engaged in consultation. *Supra* 10-13

Courts also consider not only how long the delay has been, but also how long it will likely continue – in other words, "the pace of the agency decisional process." *Pub. Citizen Health Research Grp. v. Comm'r, FDA*, 740 F.2d 21, 34 (D.C. Cir. 1984); *Cutler v. Hayes,* 818 F.2d 879, 897 (D.C. Cir. 1987) (directing courts to "ascertain the length of time that has elapsed since the agency came under a duty to act, and should evaluate any prospect of early completion"). For example, in *Muwekma Tribe*, the court found that where the agency indicated that "it would take two to four years . . . before [it] would even begin consideration of the petition," its pace violated the rule of reason and the "ambiguous, indefinite time frame" constituted unreasonable delay. 133 F. Supp. 2d at 37. The evidence here "suggests that there is no clear end in sight" to the unlawful CTP Registration Order. *Id.* While EPA is likely to devise a timeframe in response to this Petition, the Court should view it skeptically, given that EPA has ignored its duty to date in declarations filed in other ESA pesticide cases. *Supra* 11.

Given EPA's eight-year delay to date in completing a process that the agency was required to complete *before* registration and the evidence suggesting no action should be expected soon, the first *TRAC* factor tilts sharply in favor of mandamus relief.

## 2.   EPA's delay is unreasonable when judged in the context of the ESA's overall statutory scheme

The ESA's overall statutory scheme demonstrates EPA's delay is egregious. For *TRAC* factor two, courts consider whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80. Courts also "estimate the extent to which delay may be undermining the statutory scheme, either by frustrating the statutory goal or by creating a situation in which the agency is 'losing its ability to effectively regulate at all.'" *Id.* (quoting *Cutler,* 818 F.2d at 897–98). "Federal agencies must obey the law, and congressionally imposed mandates and prohibitions trump discretionary decisions." *Am. Hosp. Ass'n*, 812 F.3d at 193.

Here, the time limit that defines EPA's duties is relatively simple: the agency must issue an effects determination and engage in consultation *before* registering a pesticide. *Ctr. for Biological Diversity*, 861 F.3d at 177-179, 188 n.10; 16 U.S.C. § 1536(a)(3) (consultation required "on any prospective agency action"). Before EPA registered CTP, it had an unambiguous duty to issue an effects determination and engage in any required consultation. EPA deliberately and knowingly ignored this deadline and has continued to do so for nearly eight years.

EPA's unreasonable delay is undermining the comprehensive species protection framework of the ESA. The ESA was designed to halt and reverse the

trend toward species extinction, whatever the cost. *Tenn. Valley Auth.*, 437 U.S. at 184. Thus, "in situations where [an agency] has an actual duty" to act to protect imperiled species, such as here, "those congressional policy concerns carry substantial weight in judging the reasonableness of the [agency's] delay." *Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1, 15 (D.D.C. 2003). Specifically, the purpose of the Section 7 consultation requirement is to ensure that federal actions do not go forward if they are likely to jeopardize listed species or adversely affect their critical habitat. 16 U.S.C. § 1536(a)(2). To further this purpose, Congress specified that consultation "shall be concluded" within 90 days under the assumption no harm would occur to species prior to the completion of consultation. 16 U.S.C. § 1536(b)(1)(A).

EPA's ongoing delay in completing any required consultation during the pesticide registration process, including with CTP, flies in the face of the prompt attention that Congress intended agencies to afford endangered and threatened species through consultation. *See also Am. Rivers*, 372 F.3d at 420 (holding that FERC's six-year delay in responding to a petition requesting the commission to engage in Section 7 consultation under the ESA was egregious and reasoning that the petition was "seeking action under a law designed to 'halt and reverse the trend toward species extinction, whatever the cost'") (citation omitted).

### 3. EPA's delay is unreasonable considering the human health and welfare concerns prejudiced by the delay

The third and fifth *TRAC* factors assess the impact of the delays and strongly counsel in favor of mandamus relief here. *See TRAC*, 750 F.2d at 80; *In re Barr Labs., Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991) ("TRAC's third factor . . . overlaps with the fifth"). Under the third *TRAC* factor, delays that relate to health and welfare are more likely to necessitate judicial intervention than those that simply may have economic consequences. *TRAC*, 750 F.2d at 80. Under the fifth factor, courts consider the nature and extent of the interests prejudiced by the agency's delay. *Id. See, e.g.*, *Int'l Chem. Workers Union*, 958 F.2d at 1150 (finding that a six-year delay is "an extraordinarily long time" in the face of serious health risks); *Pub. Citizen*, 740 F.2d at 34 ("When the public health may be at stake, the agency must move expeditiously to consider and resolve the issues before it.") (citations omitted).

This Court has recognized that protection of human health and welfare includes protection of the environment. *Bluewater Network*, 234 F.2d at 1316 (granting mandamus petition when the delay "implicate[d] important environmental concerns"); *Am. Rivers*, 372 F.3d at 414 (in the ESA, Congress found various species "valuable to the health and welfare of the nation" face extinction, (citing 16 U.S.C. § 1531(a)(1)-(3)). Further, the Supreme Court has made clear that the value of endangered species is "incalculable." *Tenn. Valley*

*Auth*, 437 U.S. at 187. Congress stressed that it enacted the ESA to ensure that human health and welfare is not compromised by the extinction of species that are valuable to humans. *See, e.g., id.* at 178 (quoting H.R. Rep. No. 93-412, p. 4 (1973) ("Who knows, or can say, what potential cures for cancer or other sources, present or future, may lie locked up in the structures of plants which may yet be undiscovered, much less analyzed?")).

Here, the environmental harm caused by the delay in completing the effects determination and consultation is significant. In 2014, EPA's own Risk Assessment concluded that CTP is toxic to a range of protected species and that registered uses of CTP are likely to overlap with the habitats of 1,377 listed species. *Supra* 14-16, *see also Biodiversity Legal Found.*, 285 F. Supp.2d at 16 (in the context of the *TRAC* factors, even if the agency had been working diligently for the species' survival, its "own reports and studies demonstrate the precarious position of the bird" and the effect of the delay on its chances for survival). Moreover, once EPA engages in its ESA duties, the harm to species intended to be protected by the ESA becomes evident. ATT_0200, Hartl Decl. ¶16 (malathion pesticide ESA consultation preliminary determination that 78 species' continued existence likely jeopardized). Accordingly, the third and fifth *TRAC* factors support mandamus relief.

#### 4. Competing priorities do not justify the delay

EPA's unreasonable delays cannot be justified by a supposed competing or higher priority. *See TRAC*, 750 F.2d at 80. In its 2017 CTP decision, this Court rejected intervenors' argument that the failure to comply with the ESA was excusable because EPA developed a solution to prioritize its resources. *Ctr. for Biological Diversity*, 861 F.3d at 188 n.10. This Court held "[i]n no uncertain terms, the ESA mandates that every federal agency 'shall' comply with the ESA "before taking 'any action," and that an agency may not duck this duty, "whether based on limited resources, agency priorities or otherwise." *Id.* (citations omitted). The ESA "reveals a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." *Tenn. Valley Auth.*, 437 U.S. at 174.

Moreover, this Court has "made clear . . . that '[h]owever many priorities the agency may have, and however modest its personnel and budgetary resources may be, there is a limit to how long it may use these justifications to excuse inaction in the face of'" a duty to act. *Am. Hosp. Ass'n*, 812 F.3d at 191 (D.C. Cir. 2016) (quoting *In re United Mine Workers of America International Union,* 190 F.3d 545, 554 (D.C. Cir. 1999)); *see also In re Public Empls. for Envt'l Responsibility*, 957 F.3d 267, 275 (D.C. Cir. 2020) (noting that "[n]either a lack of sufficient funds nor administrative complexity, in and of themselves, justify extensive delay")

(citation omitted)). EPA's competing priorities cannot justify its lack of demonstrable progress toward complying with this Court's mandate.

### 5. No impropriety is necessary

Mandamus does not require that the agency's delay be driven by improper conduct or motive. *TRAC*, 750 F.2d at 80. The egregiousness of the delay itself is sufficient to warrant mandamus. *See Muwekma Tribe*, 133 F. Supp. 2d at 41 ("While the record does not disclose a hint of impropriety, the court's review of the remaining factors supports the determination that [the Department of Interior] acted and continues to act with unreasonable delay").

However, EPA's deliberate, knowing, and repeated disregard of its ESA duties during FIFRA registration imply bad faith. "An agency unreasonably delays where it acts in bad faith by being utterly indifferent to a congressional deadline." *Defs. of Wildlife v. Browner*, 909 F. Supp. 1342, 1345 (D. Ariz. 1995) (citing *Barr Labs.*, 930 F.2d at 76)). As this Court noted in *Core Communications*, when the agency argued that mandamus relief wasn't necessary because it was "on the brink of concluding" its remand order obligations: "[w]e have heard this refrain before." 531 F.3d at 858.

In sum, the *TRAC* factors illustrate the egregiousness of EPA's eight-year delay and weigh in favor of mandamus relief.

## III.  A COURT-IMPOSED DEADLINE AND VACATUR ARE NECESSARY

"EPA's history of delay and missed deadlines with respect to its statutory obligations . . . indicates that a court-imposed schedule is necessary here." *Envtl. Def. Fund v. EPA*, 852 F.2d 1316, 1331 (D.C. Cir. 1988). There is a point when the court must "let an agency know, in no uncertain terms, that enough is enough." *Pub. Citizen Health Research Grp. v. Brock*, 823 F.2d 626, 627 (D.C. Cir. 1987)).

Case law from this Circuit, make it clear that when there has been unreasonable agency delay, courts have power and discretion to enforce compliance within some form of timeline. When an agency has failed to comply with a remand order and mandate, as here, this Court has ordered compliance in two to six months. *PEPCO*, 702 F.2d at 1035 (ordering agency to issue decision within sixty days of effective date or court's order after five-year delay); *PMOI*, 680 F.3d at 838 (ordering agency to issue decision within four months from date of opinion after two-year delay); *Core Communications*, 531 F.3d at 861-62 (ordering agency to issue decision within six months of oral argument after six-year delay). EPA's delay of four and one-half years warrants a court-ordered deadline to comply.

Further, the fact that EPA intentionally ignored the statutory deadline to complete its ESA obligations before registering CTP supports a court-ordered deadline. "It corrupts the statutory scheme" to keep in place agency actions that do

not comply with the law. *MCI*, 627 F.2d at 342. *See also Am. Rivers*, 372 F.3d at 420 (ordered response to ESA petition within 45 days); *Sierra Club v. EPA*, 719 F.2d 436, 469-70 (D.C. Cir. 1983) (directing EPA to promulgate new regulations within six months, "the period originally specified by Congress"); *Am. Waterways Operators v. Wheeler*, 507 F. Supp. 3d 47, 78 (D.D.C. 2020) (ordering remand without vacatur for a period of 90 days because of statutory timeframe); *Int'l Chem. Workers Union*, 958 F.2d at 1150 (granting mandamus and ordering completion of rulemaking in under 6 months); *Sinclair Wyoming Refining Co., v. Envt'l Prot. Agency*, 2021 U.S. Ap. LEXIS 36518, No. 19-1196, Order, Doc. 1925942 at 3 (D.C. Cir. Dec. 8, 2021) (per curiam) ("time limit is warranted in light of the 90-day statutory deadline and EPA's delay."). Nor should this Court be swayed if EPA proposes a voluntary schedule in response to this Petition. *See In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1139–40 (9th Cir. 2020) (EPA took steps five days after petition filed and argued it was making progress). EPA should not be allowed to continue to evade the ESA's statutory duties without a deadline.

This Court should also order that the CTP Registration is vacated if EPA does not comply with the deadline, as a necessary incentive in light of EPA's egregious and repeated delay. *Core Communications*, 531 F.3d at 862 (ordering final rule and vacating the rules unless agency complied with the court's); *see also Radio–Television News*, 229 F.3d at 272 (because the agency had done nothing to

cure the deficiencies previously identified by the court "of which it has been long aware," this Court issued "a writ of mandamus directing the Commission immediately to repeal" the rules at issue).

Finally, this Court should retain jurisdiction to ensure compliance. *Core Communications*, 531 F.3d at 862 (retaining jurisdiction to ensure compliance); *Idaho Cons'n League*, 811 F.3d at 516 (retaining jurisdiction and ordering status reports); *MCI*, 627 F.2d at 346. After eight years of intentionally disregarding the ESA and over four years of failing to comply with this Court's Remand Order, every tool is necessary to ensure compliance.

## CONCLUSION

EPA has violated, and is continuing to violate, its clear obligation to comply with this Court's Remand Order and the ESA. EPA's unlawful delays are egregious, exceeding reasonable timeframes by years. For all the foregoing reasons, Petitioners respectfully request that the Court issue a writ of mandamus directing EPA to comply within six months, vacating EPA's action if it fails to meet the deadline, and retaining jurisdiction.

Respectfully submitted on December 21, 2021,

*/s/ Stephanie M. Parent*
STEPHANIE M. PARENT (DC Bar 56357)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Tel: (971) 717-6404

Fax: (503) 283-5528
sparent@biologicaldiversity.org

JONATHAN EVANS (DC Cir Bar #53186)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 844-7100 x318
Fax: (510) 844-7150
jevans@biologicaldiversity.org

*Attorneys for Petitioners*

## ADDENDUM OF CIRCUIT RULE 21(d) CERTIFICATES

Pursuant to D.C. Circuit Rules 21(d) and 28(a)(1)(A), on behalf of Petitioners, Center for Biological Diversity and Center for Food Safety, undersigned counsel certifies as follows.

### i.    Parties, Intervenors, and Amici to this Case

This case is a petition for writ of mandamus, not an appeal from the ruling of a district court. The parties to this case include:

Petitioners - Center for Biological Diversity and Center for Food Safety.

Respondent, if ordered (D.C. Circuit Rule 21(a)) - The United States Environmental Protection Agency.

### ii.    Related Cases

This action seeks to enforce this Court's previous remand order in *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174 (D.C. Cir. 2017). Parties to that previous, separate proceeding include:

Petitioners - Center for Biological Diversity and Center for Food Safety, and Defenders of Wildlife.

Respondent - The United States Environmental Protection Agency.

Intervenor-Respondents - E. I. du Pont de Nemours and Company, Syngenta Crop Protection LLC, CropLife America;

### iii.    Rule 26.1 Disclosure Statement

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, Petitioners make the following disclosures:

Center for Biological Diversity is an environmental non-profit organization that has no parent companies, and no publicly held company has a ten percent or greater ownership interest in Center for Biological Diversity.

Center for Food Safety is an environmental non-profit organization that has no parent companies, and no publicly held company has a ten percent or greater ownership interest in Center for Food Safety.

Respectfully submitted on December 21, 2021,

*/s/ Stephanie M. Parent*
STEPHANIE M. PARENT (DC Bar 56357)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Tel: (971) 717-6404
Fax: (503) 283-5528
sparent@biologicaldiversity.org

JONATHAN EVANS (DC Cir Bar #53186)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 844-7100 x318
Fax: (510) 844-7150
jevans@biologicaldiversity.org

*Attorneys for Petitioners*

# CERTIFICATE OF COMPLIANCE

I certify that the forgoing motion was printed in a proportionally spaced font of 14 points and that, according to the word-count program in Microsoft Word, it contains 7,755 words in compliance with D.C. Circuit Rule 18(b).

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2021, I served the foregoing Petition for Writ of Mandamus and associated Appendix of Attachments in Support of Petition for Writ of Mandamus via electronic mail on Respondent Environmental Protection Agency after written consent was obtained pursuant to FRAP 25(c)(2) and DC Circuit Rule 25(f):

> Lesley Lawrence-Hammer                          *via e-mail*
> Email: lesley.lawrence-hammer@usdoj.gov
> U.S. Department of Justice
>
> Michelle Knorr                          *via e-mail*
> Email: knorr.michele@epa.gov
> Environmental Protection Agency

Courtesy copies of the foregoing Petition for Writ of Mandamus and associated Appendix of Attachments in Support of Petition for Writ of Mandamus were sent via electronic mail to all counsel representing parties in the related proceeding:

> Counsel for Intervenors E. I. DU PONT DE NEMOURS AND COMPANY and Syngenta Crop Protection LLC:
> Kirsten L. Nathanson
> Email: knathanson@crowell.com

Crowell & Moring LLP
Firm: 202-624-2500
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

Counsel for Intervenor CropLife America:
Claudia M. O'Brien
Email: claudia.o'brien@lw.com
Stacey Lynn VanBelleghem
Email: Stacey.VanBelleghem@lw.com
Latham & Watkins LLP
Firm: 202-637-2200
555 11th Street, NW
Suite 1000
Washington, DC 20004-1304

Counsel for Petitioner Defenders of Wildlife:
Michael Senatore
Email: msenatore@defenders.org
Defenders of Wildlife
1130 17th Street NW
Washington, DC 20036

DATED: December 21, 2021                    /s/ *Stephanie Parent*
                                            Stephanie Parent

# RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, Petitioners make the

following disclosures:

Center for Biological Diversity has no parent companies, and no publicly held company has a ten percent or greater ownership interest in Center for Biological Diversity.

Center for Food Safety has no parent companies, and no publicly held company has a ten percent or greater ownership interest in Center for Food Safety.

Respectfully submitted on December 21, 2021,

*/s/ Stephanie M. Parent*
STEPHANIE M. PARENT (DC Bar 56357)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Tel: (971) 717-6404
Fax: (503) 283-5528
sparent@biologicaldiversity.org

JONATHAN EVANS (DC Cir Bar #53186)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 844-7100 x318
Fax: (510) 844-7150
jevans@biologicaldiversity.org

*Attorneys for Petitioners*